# STATE OF MICHIGAN

# COURT OF APPEALS

JODI PERRY,

        Plaintiff-Appellee,

v

ROBERT J. PERRY,

        Defendant,

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 330966
Kalamazoo Circuit Court
LC No. 2015-000263-NI

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant Progressive Marathon Insurance Company (Progressive) appeals by leave granted a November 17, 2015, trial court order denying its motion for summary disposition. For the reasons set forth in this opinion, we reverse and remand for entry of an order granting summary disposition in favor of Progressive.

## I. FACTS

On June 20, 2013, plaintiff was a passenger in a Honda Pilot owned and driven by defendant Robert Perry, her husband. Robert Perry rear-ended another vehicle that day and plaintiff suffered injuries. The Pilot was insured by Progressive. Robert Perry was a named insured and plaintiff was listed as a driver or household resident on the policy. The policy included coverage for "Uninsured/Underinsured Motorist" in the amount of "$250,000 each person/$500,000 each accident." The policy included the following relevant provisions:

### PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury:

-1-

1. sustained by an **insured person**;

2. caused by an accident; and

3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

**ADDITIONAL DEFINITIONS**

When used in this Part III:

1. "**Insured person**" means:

  a. **you** or a **relative**;

  b. any person while operating a **covered auto** with the permission of **you** or a **relative**

  c. any person **occupying**, but not operating, a **covered auto**; and

  d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a, b, or c above.

2. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

  a. to which no bodily injury liability bond or policy applies at the time of the accident.

* * *

  e. to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the **declarations page**.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**.

* * *

g. that is a **covered auto.**

The policy defined the term "**you**" and "**your**" as:

a. a person shown as a named insured on the declarations page; and

b. the spouse of a named insured if residing in the same household at the time of the loss.

On June 15, 2015, plaintiff commenced this lawsuit alleging that her husband was negligent and that the negligence caused her to suffer a serious impairment of bodily function. Plaintiff alleged that Robert Perry was an "underinsured" motorist for purposes of the insurance policy and that she was therefore entitled to recover "uninsured/underinsured" benefits under the policy.

Progressive moved for summary disposition, arguing that the underinsured motorist coverage did not apply because the policy's definition of "underinsured motor vehicle" was included in the policy's definition of "uninsured motor vehicle," which did not apply to any vehicle owned, furnished, or available to plaintiff and defendant. Progressive also argued that the definition of "uninsured motor vehicle" did not include a "covered automobile," under the policy.

Plaintiff responded, arguing that she was not limited to the $20,000 of liability limits to her husband Robert, but instead could recover under the $250,000 underinsured motorist coverage clause. Plaintiff argued that the policy defined "uninsured vehicle," but that definition did not incorporate "underinsured vehicle." The policy did not define "underinsured," and, therefore, the exclusions relied on by Progressive did not apply to plaintiff. Instead, uninsured and underinsured coverage was separate and plaintiff was entitled to coverage because the Pilot was an underinsured motor vehicle. Plaintiff argued that the policy was ambiguous as to the meaning of "underinsured motor vehicle," and that the ambiguity should be construed against Progressive.

The trial court held a hearing. At the hearing, Progressive argued that underinsured motorist coverage does not apply when "the person who is allegedly at fault happens to be occupying or operating an owned vehicle or a covered vehicle." Progressive argued that the policy's definition of "uninsured motor vehicle" incorporated "underinsured motor vehicle," and therefore all of the same exclusions applied—i.e. namely that uninsured/underinsured did not apply to covered individuals and covered vehicles. Progressive argued that while the policy only defined "uninsured motor vehicle," when the policy was read as a whole, that definition also applied to "underinsured motor vehicle." Progressive noted that throughout the policy, uninsured/underinsured coverage was referenced together and, therefore, the meaning of the terms must be interpreted in the same manner. Progressive cited language in the policy that provided that an "uninsured motor vehicle" "does not include any vehicle or equipment" "owned by you or a relative or furnished or available for regular use of you or a relative" or "that is a covered auto" (emphasis removed). Therefore, because plaintiff "was occupying a vehicle that was both owned by her and it was . . . [a] covered auto under the policy," "[t]his is the exact

-3-

scenario that every insurer in the State of Michigan does not agree to provide coverage for under UM and UIM."

> After hearing arguments the trial court held as follows:

> This case boils down to a contract that is written in such a way as to clearly define circumstances involving uninsured motorist with a dispute as to whether those provisions have been included extended to cover underinsured motorist.

> There is not argument that the Plaintiff was an insured person or that the vehicle was a covered vehicle. The only issue in this case is whether the definition provided in the policy clearly and unambiguously excludes or includes both uninsured and underinsured vehicles.

> I believe that it does clearly exclude coverage for uninsured motor vehicle - - motor vehicles as it cited by the parties.

> Underinsured vehicle is not specifically defined in the definition section. The closest the parties come is reference to underinsured/uninsured motorist coverage which specifically advises what those amounts would be and what injuries are, in fact, covered.

> The question becomes, if underinsured means something different than uninsured as far as the policy is concerned, then section 2e clearly would provide exclusion as relates to the covered vehicle in this matter.

> * * *

> I cannot say that conclusively there is language in this contract that specifically covers an underinsured motor vehicle. For that reason, the exclusions that are set forth in paragraph two which applied to uninsured motor vehicles would not automatically cover underinsured motor vehicle.

> The Court believes that language is not clear enough to merit granting of summary disposition in favor of Progressive, however, by the same token, the Court does not believe it is so clearly no covering underinsured as to justify granting motion to the Plaintiff under (I)(2).

The trial court entered a written order on November 17, 2015, and denied Progressive's motion for reconsideration. Progressive then moved for leave to appeal and on April 25, 2016, this Court granted Progressive leave to appeal. *Perry v Perry*, unpublished order of the Court of Appeals, entered April 25, 2016 (Docket No. 330966).

## II. ANALYSIS

-4-

Progressive argues that the trial court erred in denying its motion for summary disposition because, when read as a whole, plaintiff is excluded from recovering "underinsured" motorist benefits.

Progressive moved for summary disposition based on both MCR 2.116(C)(8) and (C)(10); however, because the trial court considered documentary evidence beyond the pleadings—i.e. the insurance policy, we review the order as having been decided under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). We review de novo a trial court's decision whether to grant a motion for summary disposition. *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington*, 298 Mich App at 270.

This case requires that we interpret the applicable provisions of the insurance contract; a circuit court's interpretation of an insurance contract is reviewed de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "[I]n reviewing an insurance policy dispute [courts] must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353-354; 596 NW2d 190 (1999). "First, an insurance contract must be enforced in accordance with its terms." *Id.* at 354. "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010).

In this case, the issue is whether plaintiff is entitled to recover "underinsured" motorist benefits under the policy. Because underinsured motorist coverage is not required by Michigan statute, "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contract." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998). Here, the Declarations Page provides coverage for "Uninsured/Underinsured Motorist" in the amount of "$250,000 each person/$500,000 each accident." The policy includes "Part III – Uninsured/Underinsured Motorist Coverage," and provides definitions relevant to this form of coverage. Part III contains an "Insuring Agreement," that provides as follows:

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury:

1. sustained by an **insured person**;

2. caused by an accident; and

3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

Included within Part III, the policy sets for the following "Additional Definitions:"

When used in this Part III:

2. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

   a. to which no bodily injury liability bond or policy applies at the time of the accident;

* * *

   e. to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the **declarations page**.

Reading the policy as a whole indicates that the phrase "uninsured motor vehicle" is inclusive of the phrase "underinsured motor vehicle," and that the exclusions that apply to uninsured motor vehicles also apply to underinsured motor vehicles. Specifically, Part III Section 2e defines "Uninsured motor vehicle" to include a motor vehicle "to which bodily injury liability . . . applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury *is less than the coverage limit* for Uninsured/Underinsured Motorist Coverage shown on the declarations page" (emphasis added). This is a clear reference to underinsured motor vehicles. In other words, the term "uninsured motor vehicle," incorporates the term "underinsured motor vehicle." Paragraph 2e clearly references an underinsured motor vehicle— i.e. the paragraph references vehicles that have liability coverage that is less than the "uninsured/underinsured" coverage listed on the Declarations Page. This reading of the policy is further supported by the fact that the term "uninsured/underinsured" is used in several pertinent parts of the policy including the declarations page, the table of contents and the heading of Part III, the part in which the definition at issue is found. Thus, the mere fact that "underinsured motor vehicle" does not have its own separate definition does not create an ambiguity where that term is incorporated into the policy's definition of "uninsured motor vehicle," and the trial court erred in concluding otherwise.

Having determined that underinsured is incorporated into the definition of uninsured, we now proceed to determine whether the exclusions preclude plaintiff from recovering uninsured/underinsured motorist benefits. The relevant provisions in the policy provide:

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

-6-

a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**.

\* \* \*

g. that is a **covered auto.**

Thus, taking into account the policy's definition of "you" and "your,"[1] under the policy, an uninsured motor vehicle—which includes an underinsured motor vehicle as discussed above—does not include:

(1) any vehicle owned by persons who are a named insured, spouses of named insureds that live in the same household, or relatives of named insureds who have access to regular use of the motor vehicle owned by a named insured.

(2) a motor vehicle that is a "covered auto."

Here, it is undisputed that the Pilot was a covered auto at the time of the accident; therefore, the Pilot could not constitute an "underinsured motor vehicle" for purposes of uninsured/underinsured motorist coverage. Moreover, plaintiff was the spouse of and resided with a named insured who owned the Pilot; therefore, the Pilot could not be considered an uninsured/underinsured motor vehicle for purposes of the policy. In short, under the plain language of the policy, plaintiff was not entitled to recover underinsured motorist benefits.

Plaintiff cites Progressive's website and references an affidavit from a purported expert on no-fault insurance to argue that "uninsured" and "underinsured" motorist coverage constitute separate coverage with separate definitions. However, the expert's opinion and language on the website are irrelevant because our focus is limited to a review of the plain language of the insurance policy. *Henderson*, 460 Mich at 353-354. As discussed above, the language in Part III defines "uninsured motor vehicle" to incorporate "underinsured motor vehicle," and that language governs the outcome of this appeal. *Id*.

Plaintiff also appears to argue that Part III's "Insuring Agreement" makes no mention of exclusions and, therefore, at minimum, there is an ambiguity that must be submitted to the trier of fact. Plaintiff is correct that Part III's "Insuring Agreement" makes no reference to exclusions; however, the insurance policy must be read as a whole. *McGrath*, 290 Mich App at 439. Here, Part III incorporates exclusions that clearly bar named insureds and covered automobiles from uninsured/underinsured motorist coverage. Therefore, when read as a whole, the policy clearly provides benefits, then excludes those benefits under certain circumstances such as the case at bar. Accordingly, there is no ambiguity and the trial court erred in holding otherwise.

---

[1] The policy defines "you" and "your" to include named insureds and "the spouse of a named insured if residing in the same household at the time of the loss."

In sum, under the plain terms of the policy, plaintiff was not entitled to recover uninsured/underinsured motor vehicle benefits. Therefore, the trial court erred in denying Progressive's motion for summary disposition and we reverse and remand for entry of an order awarding summary disposition in favor of Progressive.

Reversed and remanded. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly