*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KYRA DONALD,

      Plaintiff-Appellant,

v

ANNA'S HOUSE KALAMAZOO LLC,

      Defendant-Appellee.

UNPUBLISHED
June 11, 2019

No. 343094
Kalamazoo Circuit Court
LC No. 2017-000220-CZ

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff, Kyra Donald, appeals as of right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10) and dismissing her retaliatory discharge claim against defendant, Anna's House Kalamazoo, LLC, her former employer (Anna's House). We affirm.

On January 22, 2017, plaintiff tripped and fell while working at Anna's House. According to plaintiff, at least two coworkers witnessed the fall. They immediately asked whether she was okay. Plaintiff responded that she felt "fine" and immediately returned to work. However, as part of its "Injury/Accident Policy," Anna's House required that employees "find the manager IMMEDIATELY" in the event of an injury or accident so that the cause and circumstances could be documented, and, perhaps, prevented in the future. Although plaintiff stated that she was fine, one of her coworkers insisted that they follow this policy. Plaintiff's mother, another employee at the restaurant, questioned the necessity of reporting the incident and asked the other employee to take care of it. She admitted that her daughter appeared okay and that "there was no blood, there was no anything." The assistant manager on duty also asked plaintiff whether she was alright and whether she wanted to fill out an incident report. Plaintiff declined. Nevertheless, the assistant manager interviewed plaintiff and recorded the answers on a Michigan Occupational Safety and Health Agency (MiOSHA) Form 301 "Injury and Illness Incident Report," which Anna's House keeps as an internal log of workplace accidents and injuries. Based on plaintiff's statement that she did not need any medical attention, in response to a question about the type and character of the injury, the assistant manager recorded that there was "[n]o known injury at this time." Plaintiff does not contend that she was ever discouraged

from filing the Incident Report, from reporting accidents to management, or from filing any workers' compensation claim.

Two days later, on January 24, 2017, the general manager of Anna's House notified plaintiff she was terminated and that she need not show up for her next scheduled shift. On or around January 26, 2017, plaintiff visited a doctor complaining of a strained back. The doctor recommended that she return to work only with restrictions. Plaintiff thereafter filed this lawsuit claiming that she was fired in retaliation for reporting the workplace accident. Anna's House maintains that it fired plaintiff as part of an organizational restructuring entirely unrelated to plaintiff's trip and fall and denied it was even aware of any possible assertion of workers' compensation rights before terminating plaintiff's employment. The trial court opined that, while it was unclear whether filling out a MiOSHA report was sufficient to put Anna' House on notice that plaintiff was seeking medical treatment for her fall, there was no question of material fact that plaintiff did not assert her right to worker's compensation to the individual that decided to terminate her. The trial court further opined that defendant adequately established its managerial reason for terminating plaintiff such that there was no causal connection between plaintiff's termination and any action of asserting her rights to worker's compensation disability benefits.

On appeal, plaintiff contends that the trial court erred in granting defendant summary disposition. According to plaintiff, Anna's House unlawfully terminated her under the Workers Disability Compensation Act (WDCA) in retaliation for her choice to report a workplace trip and fall to management. She claims that the Incident Report is protected activity under the WDCA, and that, because she was a good employee, the decision by management to fire her only two days after she fell must have been retaliatory in nature.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Id*. at 139-140 (quotation marks and citations omitted).]

Issues of statutory interpretation are questions of law that this Court reviews de novo. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012).

The primary purpose of the WDCA is to "promptly deliver benefits to employees injured in the scope of their employment." *Id*. at 272 (quotation marks and citations omitted). In furtherance of this purpose, the WDCA creates a cause of action for retaliatory discharge so as to

prevent an employer from "terminat[ing] or otherwise discriminat[ing] against an employee in retaliation (1) for filing a complaint under the WDCA, (2) for instituting or causing a proceeding to be instituted under the WDCA, or (3) 'because of the exercise by the employee . . . of a right afforded by [the WDCA].' " *Id.* at 272 (third alteration in original), quoting MCL 418.301(13).

In *Cuddington*, this Court set forth the elements of a cause of action for retaliatory discharge under the WDCA:

> To establish a prima facie case of retaliation under the WDCA, an employee who has suffered a work-related injury must present evidence: (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under [the WDCA] were causally connected. [*Cuddington*, 298 Mich App at 275.]

Importantly, "a cause of action for retaliatory discharge cannot be based on the *anticipated* exercise of a right afforded under the [WDCA]." *Id*. at 280. Rather, the employee bringing a claim for retaliatory discharge "must show that he or she first exercised such a right," and that, subsequently, "the employer terminated or otherwise discriminated against the employee in response to that conduct." *Id*.

Whether plaintiff engaged in protected activity is a threshold determination for her claim of retaliatory discharge to survive summary disposition. See *Id*. at 280. Assuming, without deciding, that plaintiff asserted a right to obtain necessary medical services after her injury, plaintiff nevertheless failed to establish that she asserted this right to anyone involved in the decision to terminate her.

Plaintiff had two managers throughout her employment, Ms. Awe and Mr. Lubbers. Ms. Awe completed plaintiff's incident report with respect to her fall, during which plaintiff denied any injuries and admittedly made no comment or claim to Ms. Awe about worker's compensation benefits. Mr. Lubbers was the individual who terminated plaintiff's employment and there is no indication that plaintiff mentioned the fall or any worker's compensation claim to him.

Additionally, to establish a prima facie case of retaliatory discharge, plaintiff bore the burden to establish a causal connection between any protected activity and the adverse employment action. See *Chiles v Machine Shop, Inc*, 238 Mich App 462, 470; 606 NW2d 398 (1999). Plaintiff cannot establish causation merely by pointing to the short two-day gap between the accident and her termination. See *West v Gen Motors Corp*, 469 Mich 177, 186 n 12; 665 NW2d 468 (2003) ("Relying merely on a temporal relationship is a form of engaging in the logical fallacy of post hoc ergo propter hoc (after this, therefore in consequence of this) reasoning.") (quotation marks and citation omitted). Rather, to prove causation, plaintiff "must show something more than merely a coincidence in time between protected activity and adverse

employment action." *Id*. at 186. Plaintiff has failed to do so in any way. On the record, a juror could not reasonably conclude that plaintiff's termination was in any way related to plaintiff's purported invocation of rights under the WDCA. See *Cuddington*, 298 Mich App at 277.

Affirmed.

/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens