*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLE ANDREA WILLIAMS,

        Plaintiff-Appellant,

v

FAIRLAINE MEADOW LLC and THE HAYMAN
COMPANY,

        Defendants-Appellees.

UNPUBLISHED
June 11, 2026
9:48 AM

No. 371436
Wayne Circuit Court
LC No. 23-005116-CK

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

LETICA, J. (*dissenting*).

I respectfully dissent from the decision to dismiss this case for lack of jurisdiction. Instead, I would exercise my discretion in the interest of judicial economy to treat plaintiff's claim of appeal as a delayed application for leave to appeal, grant it, and address the issues presented. After reviewing those issues, I would affirm the trial court's order granting defendants' motion for summary disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from plaintiff's rental of an apartment at Fairlane Meadow Apartments. Defendant Fairlane Meadow LLC owns the apartments; however, defendant Hayman Company manages it.

In 2018, plaintiff moved to a townhouse in the complex; thereafter, she renewed her lease for three consecutive years. Plaintiff did not report any issues with rodents until November 22, 2021.[1] At 6:11 p.m., on that date, plaintiff reported hearing an animal, perhaps a rat, squirrel, opossum, or raccoon, in her living room ceiling for "about 2 1/2 weeks." A work order was

---

[1] Plaintiff later presented a ring camera video purportedly showing a rat on the sidewalk outside her apartment building.

completed on the morning of November 24, and, on November 26, a pest control company used by defendants reported:

> treated unit X 103 animal in ceiling: resident reports[]hearing animal in living room ceiling. No evidence reported or found in unit during inspection.

But a station was checked in the exterior of X 113 with nothing captured.

On December 6, 2021, plaintiff talked to the property manager, reporting that the noise continued despite the pest control company "still coming out." Four days later, plaintiff saw a dead rat in the parking lot.

On February 17, 2022, plaintiff contacted the Dearborn Vector Department, reporting "a rat infestation in [her] apartment building (building X) and really the complex as a whole." Therein, plaintiff reported initially hearing the rats on November 10, 2021. According to plaintiff, when the pest control company came out, it confirmed that "the rats were not originating from inside [her] unit (or any other units in the building)." Plaintiff was told to follow up, which she tried to do on November 29, 2021. Although plaintiff was unsuccessful, another resident in her building reached the property manager, who reported defendants were working with the pest control company to set traps. Because plaintiff had not received a call back, she contacted the manager herself on December 6, 2021. He informed her that traps had been set and would be checked once or twice each week. He added that the rat issue "had been an ongoing issue throughout the complex for some time." Plaintiff added that "at least 3 other residents in [her] building had also reported hearing rats in the walls and ceilings." Plaintiff was advised the traps were the only recourse and the residents had to "give it time to see if the traps worked." In plaintiff's view, the traps were not enough because, as of February 16, 2022, she heard them "every single day, [saw] them crawling around outside of the apartment buildings/in parking lots, and [saw] them . . . dead in the parking lots." And, on February 15, 2022, the resident in the apartment behind plaintiff had a rat appear inside her apartment. Plaintiff reported trying to reach the property manager but could not reach him or get a call back. At one point, plaintiff had been offered the opportunity to move, but it would have been inconvenient for her to do so. Furthermore, there were "rats . . . all over the complex" so there was no guarantee plaintiff would not experience the same issue.

Regardless, plaintiff renewed her lease in July 2022. On October 21, 2022, plaintiff saw rats inside her apartment for the first time, including one in her bedroom and another in her kitchen pantry. Plaintiff also photographed purported rat dropping on her bedroom floor. Plaintiff contacted the emergency maintenance telephone number for the complex. About an hour later, a maintenance technician inspected plaintiff's apartment, finding a hole in the wall inside the laundry room closet, which occurred after February 2022. The technician put steel wool into the hole and set up rat traps.

On October 22, 2022, plaintiff photographed a purported rat dropping on her bathroom floor. The next day, plaintiff photographed two rat droppings on a stuffed animal.

On October 25, 2022, plaintiff captured a screenshot of a rat in her apartment, left the apartment, and returned to her parents' home. The next day, plaintiff came back to retrieve her belongings. She again captured a screenshot of a rat inside her apartment. That same day, plaintiff entered a new lease contract at the Fairlane Town Center.

Either that week or the following week, defendants sent their maintenance technicians as well as the pest control company out to set traps and repair the hole in the wall. On October 29, 2022, plaintiff photographed a dead rat inside her dresser drawer and threw away the clothing inside.

On November 1, 2022, plaintiff provided a letter dated October 25, 2022, reflecting that she was giving 30 days' notice to terminate her lease early due to the rat infestation. Plaintiff added that she had reported the rat issue in November 2021, but it had not been resolved and rats had entered her unit.

On November 5, 2022, in the process of moving out, plaintiff and her mother found a dead rat inside a drawer, threw away the clothes therein, and notified another complex maintenance technician about this discovery. They also went to defendants' leasing office where plaintiff made her final rent payment. Defendants allowed plaintiff to terminate her lease early without penalty; however, plaintiff's security deposit was not returned.

On April 21, 2023, plaintiff sued defendants, claiming that the apartment she rented from them was rat-infested. In Count I, plaintiff alleged a premises-liability claim, and, in Count II, she alleged a breach of the implied warranties under MCL 554.139(1)[2] along with violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*.[3]

---

[2] In pertinent part, MCL 554.139 provides:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

[3] Based on defendants' representations in their advertisements about the characteristics and standard of living at the Fairlane Meadow Apartments, plaintiff identified the following provisions of MCL 445.903 as being applicable:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> * * *

After discovery concluded, defendants moved for summary disposition under MCR 2.116(C)(8) and (10).  As to Count I, defendants alleged that plaintiff did not inform them of the rat problem until she reported the issue in October 2022, at which time defendants addressed the situation, and, later, allowed plaintiff to terminate her lease without penalty.  Further plaintiff's claims for breach of the implied warranties failed because the MCPA did not apply, and, even if it did, plaintiff did not rely on defendants' 2023 advertisements, which were nonactionable puffery in any event.

Plaintiff opposed defendants' dispositive motion.  She contended she reported rat and noise issues beginning in 2019 and her remaining claims were viable.  Plaintiff also moved to file an amended complaint to add counts for violation of the Michigan Housing Law, MCL 125.474,[4] breach of the covenant of quiet enjoyment, breach of contract, and violations of MCL 554.139(1)(a) and (b)[5] for failure to keep the premises fit for its intended use and in reasonable repair.

Defendants opposed plaintiff's motion to file an amended complaint.  The trial court, however, granted it.

Defendants also filed a reply to plaintiff's answer to their motion for summary disposition.  Thereafter, the trial court heard oral argument and granted defendants' motion, explaining that the pest control company responded after plaintiff's complaints and that defendants let plaintiff out of her lease.

Defendants filed a notice of presentment of an order under MCR 2.602(B)(3), attaching a proposed order granting their motion for summary disposition and dismissing plaintiff's claims with prejudice.  The following day, plaintiff filed her amended complaint, and, thereafter objected

---

(b) Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

* * *

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

[4] MCL 125.474 provides:

Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same.  The owner of every dwelling shall be responsible for keeping the entire building free from vermin.  The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control.

[5] See footnote 2.

to defendants' proposed order because the trial court had only dismissed her original complaint, not the amended complaint. After oral argument on plaintiff's objection, the trial court determined that it intended to dismiss all counts and there was no liability despite the allegations in the amended complaint.

## II. THE JURISDICTIONAL CHALLENGE

On June 25, 2024, plaintiff filed her "claim of appeal" from the trial court's May 24, 2024 final order granting defendants' motion for summary disposition. The jurisdictional checklist filed with the "claim of appeal" shows that the box "Other" was checked with this explanation: "Late filing under MCR 7.205(A)(4) [the rule for filing a delayed application for leave to appeal] as [the trial court's May 24, 2024] order was not received until 6/7/24[.]" On July 1, 2024, this Court's Clerk's Office followed up on plaintiff's "claim" under MCR 7.204(A)(3),[6] reasoning that her "statement in the jurisdictional checklist regarding the timing of the claim of appeal was insufficient. See MCR 7.204(A)(3) for requirements." The Clerk's Office also emailed defendants' attorney.

On July 17, 2024, plaintiff timely responded to the Clerk's emailed letter that the trial court's order had not been served on counsel until June 7, 2024, and therefore, she should have 21 days to decide whether to appeal. This, however, was deficient because the "claim of appeal" was not filed within 14 days of the late service. See MCR 7.204(A)(3) (the very rule cited in the Clerk's email). Yet, this Court's Clerk's Office did not initiate this Court's permissive process to dismiss the "claim of appeal." See MCR 7.203(F)(1).[7] Instead, it followed up on other matters, including plaintiff's failure to file a docketing statement and transcripts, which plaintiff ultimately addressed.

On November 27, 2025, plaintiff filed a timely, albeit deficient brief due to a missing a word count certification. Plaintiff also corrected that defect.

Subsequently, on January 2, 2025, defendants filed their appellee brief, challenging this Court's jurisdiction over plaintiff's "claim of appeal." Notably, defendants did not earlier

---

[6] MCR 7.204(A)(3) states:

> When service of the judgment or order on appellant was delayed beyond the time stated in MCR 2.602, the claim of appeal must be accompanied by an affidavit setting forth facts showing that the service was beyond the time stated in MCR 2.602. Appellee may file an opposing affidavit within 14 days after being served with the claim of appeal and affidavit. If the Court of Appeals finds that service of the judgment or order was delayed beyond the time stated in MCR 2.602 and the claim of appeal was filed within 14 days after service of the judgment or order, the claim of appeal will be deemed timely.

[7] MCR 7.203(F)(1) provides: "Except when a motion to dismiss has been filed, the chief judge or another designated judge may, acting alone, dismiss an appeal or original proceeding for lack of jurisdiction." "The use of the word 'may' in [a] court rule is permissive." *Veltman v Detroit Edison Co*, 261 Mich App 685, 695; 683 NW2d 707 (2004).

-5-

challenge plaintiff's July 17, 2024 affidavit. See MCR 7.204(A)(3). Nor did defendants move to dismiss plaintiff's "claim of appeal" under MCR 7.211(C)(2), which provides that "[a]n appellee may file a motion to dismiss an appeal any time before it is placed on a session calendar on the ground that (a) the appeal is not within the Court of Appeals jurisdiction . . . ."[8] Instead, defendants' objection occurred well outside the 6-month window for plaintiff to file a delayed application for leave to appeal under MCR 7.205(A)(4)(a).

Recognizing that the initial error was plaintiff's and that this Court had no duty to dismiss plaintiff's untimely claim of appeal under MCR 7.203(F)(1), in my view, this Court's failure to do so, in addition to defendants' failure to earlier raise a jurisdictional challenge, would deprive plaintiff of her ability to appeal. See MCR 7.205(A)(4)(a) (permitting a delayed application for leave to appeal to be filed within 6 months of the entry of an order) or MCR 7.205(A)(4)(b) (permitting a delayed application for leave to appeal to be filed within 21 days of this Court's order dismissing for lack of jurisdiction *if* the initial claim of appeal was filed within 21 days of the entry of the order appealed from). Furthermore, our Supreme Court has previously recognized that this Court is permitted to treat a matter as a delayed application if it determines that it did not have jurisdiction as of right. See e.g., *Ozimek v Rodgers*, 499 Mich 978; 881 NW2d 472 (2016) ("If the Court of Appeals determines that the Wayne Circuit Court Family Division's order is not appealable by right, it may then dismiss the plaintiff-appellant's claim of appeal for lack of jurisdiction, or exercise its discretion to treat the claim of appeal as an application for leave to appeal and grant the application. See *Varran v Granneman (On Remand)*, 312 Mich App 591; 880 NW2d 242 (2015), and *Wardell v Hincka,* 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012)."). In this case, I would exercise my discretion to treat plaintiff's untimely claim of appeal as an application for leave to appeal and grant it so that plaintiff is not deprived of her ability to appeal.

### III. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "De-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Although the trial court did not specify under which subrule it granted defendants' motion, because the trial court considered documentary evidence outside of the parties' pleadings, the motion is treated as having been granted under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160.

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A

---

[8] At oral argument, defendants' attorney explained that they had little success with such motions.

motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

The party moving for summary disposition "has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363.

## B. ANALYSIS

On appeal, plaintiff primarily contends the trial court erred by granting summary disposition in defendants' favor, which dismissed all of plaintiff's claims, because the trial court previously granted her motion to amend the complaint. I disagree.

Initially, any assertion by plaintiff that the trial court erred by granting summary disposition in defendants' favor and dismissing the claims in the original complaint is meritless. These arguments were not included in the statement of questions presented and are deemed abandoned on appeal. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008); see also MCR 7.212(C)(5). These arguments were also abandoned because plaintiff cited no authority regarding premises liability, the MCPA, or implied warranties under MCL 554.139(1). See *Mettler Walloon, LLC*, 280 Mich App at 220 (citation omitted) ("An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims. This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority."); *Tripp v Baker*, 346 Mich App 257, 273; 12 NW3d 45 (2023) (quotation marks and citation omitted) ("Insufficiently briefed issues are deemed abandoned on appeal."). In any event, the trial court did not err by granting defendants' motion for summary disposition and dismissing the claims contained in the original complaint regarding (a) premises liability and (b) violations of the MCPA and implied warranties under MCL 554.139(1).

Plaintiff further contends the trial court erred by granting defendants' motion for summary disposition, which dismissed the new claims in her amended complaint. I disagree.

MCR 2.118(A) governs amended pleadings and provides:

(1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

(2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

(3) On a finding that inexcusable delay in requesting an amendment has caused or will cause the adverse party additional expense that would have been unnecessary had the request for amendment been filed earlier, the court may condition the order allowing amendment on the offending party's reimbursing the adverse party for the additional expense, including reasonable attorney fees.

(4) Amendments must be filed in writing, dated, and numbered consecutively, and must comply with MCR 2.113. Unless otherwise indicated, an amended pleading supersedes the former pleading.

Under MCR 2.118(B), when served with an amended pleading, the party "must (1) serve and file a pleading in response to the amended pleading, or (2) serve and file a notice that the party's pleading filed in response to the . . . earlier pleading will stand as the response to the amended pleading." Under MCR 2.110(A), pleadings only include "(1) a complaint, (2) a cross-claim, (3) a counterclaim, (4) a third-party complaint, (5) an answer to a complaint, cross-claim, counterclaim, or third-party complaint, and (6) a reply to an answer." "A motion for summary disposition is not a responsive pleading under MCR 2.110(A)." *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 261; 911 NW2d 241 (2017) (quotation marks and citation omitted). Under MCR 2.116(I)(5): "If the grounds asserted [for summary disposition] are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

Initially, this case presents a somewhat cumbersome procedural history. Defendants filed their motion for summary disposition of the original complaint on February 21, 2024. A March 1, 2024 scheduling order allowed plaintiff's response to be filed by April 3, 2024, but an untimely filing "may be considered as consent to the relief requested." The trial court scheduled a hearing on May 8, 2024. On April 4, 2024, plaintiff opposed defendants' motion for summary disposition, alluding to an amended complaint, which would "further support[] . . . rats were an *ongoing* problem from at least 2019 at [d]efendants' premises[.]" The same day, plaintiff moved to amend the complaint under MCR 2.118(A)(2) and MCR 2.116(I)(5). Despite stating a proposed amended complaint "accompanies this [motion to amend complaint]," plaintiff did not include an attachment. Nevertheless, plaintiff described her four new claims in the motion. On April 17, 2024, defendants replied in support of the motion for summary disposition. On April 23, 2024, defendants opposed plaintiff's motion to amend the complaint. On May 3, 2024, the trial court granted plaintiff's motion to amend without a hearing.

At the hearing on defendants' motion for summary disposition, the trial court granted summary disposition, determining defendants "did everything they possibly could here," and there was no liability. The trial court explained: "[T]he noise was checked out by the pest control company. The landlord sent somebody in the first time and then the second when the . . . rat came in the unit. The pest control came and took care of the situation, let her out of her lease." On

May 8, 2024, defendants filed a notice of presentment under MCR 2.602(B)(3), which included a proposed order dismissing "all of plaintiff's claims[.]"

On May 9, 2024, plaintiff filed her amended complaint. The first two counts were the same as the original complaint, and the four additional counts were the same as stated in the motion to amend the complaint. On May 14, 2024, plaintiff objected to defendants' proposed order, asserting the trial court only dismissed her original complaint and not her amended complaint. At a May 20, 2024 hearing, plaintiff's counsel stated the objection to the order was "based on [the trial court's] earlier granting [of] the motion to amend [the] Complaint, which [was] filed shortly after [the trial court] grant[ed] . . . the motion to dismiss." The trial court explained it "intended to dismiss all counts." The trial court continued: "Even considering the amendment[,] there's no liability here. . . . So the order submitted . . . is correct[.]" On May 24, 2024, the trial court entered an order granting defendants' motion for summary disposition and denying plaintiff's objections. The trial court indicated the May 24, 2024 order stated: "[T]he Court considered the possibility of Plaintiff's Amended Complaint at the time the Court granted the Motion for Summary Disposition and dismissed the case in its entirety."

It is undisputed the trial court initially granted plaintiff's motion to amend her complaint while defendants' motion for summary disposition was pending. However, as defendants note, plaintiff did not file the amended complaint until after the hearing on the motion for summary disposition. Although there was no time frame mandated by the trial court, plaintiff would have been best served by promptly filing the amended complaint with her motion and before the hearing. Ultimately, the trial court considered the amended pleading and plaintiff's objections to defendants' proposed order dismissing all of her claims.

At a subsequent hearing, the trial court, having considered "the amendment," concluded defendants were not liable to plaintiff, adding that it "intended to dismiss all counts." Under the circumstances, the trial court weighed the amended complaint and had the authority to dismiss it. See *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997) ("Decisions concerning the meaning and scope of pleading, and decisions granting or denying motions to amend pleadings, are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion.").

This Court need not address whether the trial court properly dismissed the additional claims contained in the amended complaint because plaintiff made little to no arguments regarding those claims on appeal. The only additional claim with any briefing was the alleged violation of the Michigan Housing Law under MCL 125.474. Regardless, because plaintiff provided minimal analysis, any arguments regarding these claims are abandoned. See *Tripp*, 346 Mich App at 273 (quotation marks and citation omitted) ("Insufficiently briefed issues are deemed abandoned on appeal."); see also *Mettler Walloon, LLC*, 281 Mich App at 220 (citation omitted) ("An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims. This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority."). Further, the only additional claim included in the statement of the questions presented was the alleged violation of MCL 125.474. Plaintiff's three additional claims were not included in the statement of questions presented and are deemed abandoned on appeal. See *Mettler Walloon, LLC*, 281 Mich App at 221; see also MCR 7.212(C)(5). In any event, the trial court did not err by granting summary disposition in

defendants' favor and dismissing plaintiff's additional claims in the amended complaint. Accordingly, I would affirm the trial court's order granting defendants' motion for summary disposition.


/s/ Anica Letica